WILLIAM HOEFLING V. CITY OF SAN ANTONIO.

Delivered January 20, 1897.

**1. Taxation—Assessment of City Property—Notice.**

The city assessor of taxes of San Antonio, after having given due notice by publication, as required by the charter, to the owners of property to render the same to him for taxes within two months, had the power to value and assess for taxes such property as had not been rendered at the expiration of that time.

**2. Same—Action of Board of Revision—Notice to Owner.**

The board of revision had no power to raise the valuation of property as fixed by the assessor, without notice to the owners thereof, and its action in so doing was a nullity, and could form no basis for the assessment of taxes.

**3. Same—Assessment of Separate Parcels.**

Where several lots and parcels of property belonging to one owner were separately valued and assessed, the illegal action of the board of revision in raising the valuation of some of the parcels without notice to the owners, did not affect the legality of the tax upon the other parcels, with reference to which the board had not acted.

APPEAL from Bexar. Tried below before Hon. J. L. Camp.

*W. C. Berry* and *F. H. Wash,* for appellant.—1. A citizen is entitled under the charter of the city of San Antonio and the statutes of the State of Texas to notice of any intended raising of the assessed values of his property; and in the absence of such notice, such assessment is void. Charter of City of San Antonio, sec. 194, p. 40; Sayles' Civ. Stats., art. 444a, sec. 6; Gage v. Nevill, 3 Willson's C. C., sec. 274; County of Galveston v. Galveston Gas Co., 72 Texas, 516; Cooley on Taxation (2d ed.), 287, 288, 362, 364, 366, 751-778, and note 2.

2. In the absence of a statute requiring notice of its intention to raise the values of a tax-payer's property to be given by a board of revision and appeal, or board of equalization, or even if a statute provides that no notice need be given, the failure to give notice to the tax-payer of the intention to raise the values of his property, and subsequently raising thereof without notice, renders the assessment illegal and void, and would cause the statute to be unconstitutional and of no effect, amounting to a taking of property without a due process of law. 25 Am. & Eng. Ency. Law, 251, note 1, p. 54, note 3; Cooley on Taxation (2d ed.), 52, note 5; Gilmore v. Hentig, 33 Kan., 56; Remsen v. Wheeler, 105 N. Y., 573.

*R. B. Minor, Wm. Aubrey,* and *Houston Bros.,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee instituted this suit to recover the taxes due by appellant for the fiscal year ending February 28, 1891, and to foreclose a lien for the taxes on the property upon which they were alleged to be due. In the petition it was alleged that the taxes had been duly levied by the city council; that appellant failed to render his property for taxation; that the same was duly assessed by the city

assessor, who gave "the value of each piece or parcel of land, stated separately, and the value of the land, and the value of the improvements, separately stated, and the name of William Hoefling, Sr., being in said assessment list set opposite the respective properties as the owner thereof," and that said assessment for said fiscal year was duly approved by the board of revision and appeal of said city.

The case was tried without a jury, and judgment rendered for the amount of taxes, and for foreclosure of a lien on each parcel of land for taxes due thereon.

It is admitted that the land was not rendered for taxation; that it was assessed by the city assessor in the name of appellant, the value of each piece of property being assessed by him, and that the value placed upon some of the land was increased by the board of revision and repeal, without notice to appellant. There is no controversy as to the amount of the taxes. The charter provides that taxes shall bear 8 per cent interest from time they are due.

"It is a fundamental rule that in judicial or quasi judicial proceedings affecting the rights of the citizen, he shall have notice and be given an opportunity to be heard before any judgment, decree, order or demand shall be given and established against him. Tax proceedings are not in the strict sense judicial, but they are quasi judicial, and as they have the effect of a judgment, the reasons which require notice of judicial proceedings are always present when the conclusive steps are to be taken." Cooley, Taxation, p. 363. The assessment of the property of the citizen, by virtue of the State Constitution, fixes a lien upon all his landed property, not excepting the homestead, and it is apparent how very important to him it becomes that he should be apprized at least of the action of the board of equalization to whom is confided the power of raising or decreasing the valuation of his property. When once the board has duly fixed the value of the property, the lien attaches as firmly as though it had come through the decree of a duly organized court, and while he might be relieved by appeal from the decision or decree of a court, no appeal is contemplated or provided from the award of a board of equalization, whether of a city or county. As to county boards of equalization, it is expressly provided that their action in affixing a valuation to property "shall be final and not subject to revision by said board, or any other tribunal thereafter." Art. 5124, Rev. Stats., 1895. Full provision is made in the statute for ample notice to each person interested before the assessment is raised on his property. Art. 5120, subdiv. 5.

In Stuart v. Palmer, 74 N. Y., 191, it is said: "It has always been the general rule in this country, in every system of assessment and taxation, to give the person to be assessed an opportunity to be heard at some stage of the proceedings. That due process of law requires this, has been quite uniformly recognized." It is generally held that the notice required need not be a personal citation, but will be sufficient if, by law, a time and place is fixed where the owner of property may con-

test the fairness of the valuation placed upon his property. | The statute may designate the notice to be given. But notice of some kind must be given before property can be encumbered with liens, and made subject to the payment of debts to the State or municipality. To hold otherwise would be to deprive the owner of property without the "due process of law" contemplated in the constitutional guaranties of the rights of property. County of Santa Clara v. Railway, 18 Fed. Rep., 410.

Among the highest prerogatives of sovereignty is the exercise of the power to levy tribute upon the property of the individual citizen to be used for the expenses of government, and it is a power possessed by the sovereign alone. It may, as in the case of counties and cities, be delegated by the sovereign, but such authority to be legal and binding upon the citizen, must be exercised within the strict bounds of the letter of the grant. The sovereign power itself is restricted within certain bounds, and the rights and liberties of the citizen, both as to person and property, are guarded by the charter of rights embodied in the State and national Constitution. The right of appellee to tax its citizens is derived from the State, which cannot deprive the citizen of his property without due process of law, and it follows that it could not delegate to one of its creatures an authority it does not itself possess. Nor do we think it has attempted so to do in the charter granted to the City of San Antonio.

It is provided in section 193 of the charter of San Antonio that, "it shall be the duty of the assessor to assess and return within the time fixed by the board, all property subject to taxation, and to make out a list of such property, and of persons chargeable with a poll tax, describing as near as possible the quantity, streets and bounds of real estate, and the value of the grounds and that of the inprovements separately, and to make out a list of all personal property, and return the same assessed; and all property not rendered to the assessor according to the provisions of this act, he shall proceed to assess in the name of the owner, if he be known, and if not, then it shall be assessed by description of the property and last known owner, and the value of all such property shall be determined by the board of revision and appeal, and the same may be sold as in other cases, if the tax be not paid in the time prescribed by law, the assessment to be made according to law, and the direction given by the council." The property of appellee was not returned to the assessor, and the owner being known, he proceeded to assess it in his name, valuing each piece of the property. It is contended by the appellee that when the property is returned for assessment by the owner, the value of it must be put down by the assessor; but that when the property is not rendered, the assessor has no power or authority to place a value upon it, but it must be done by the board of revision. We do not believe that the position is tenable, but that the value of the property should be fixed by the assessor, and that the provision that "the value of all such property shall be determined by the board of revis-

ion and appeal," is used in the sense of finally determined. This seems. to be apparent from section 194 of the charter, which prescribes the duties of the board of revision and appeal, and which authorizes the board to hear appeals from the acts of the assessor, correct errors, appraise all property assessed as unknown, and increase or diminish any assessment as they deem just. None but revisory authority is given to the board, unless it may be in regard to the property of unknown owners. It is not claimed that the ownership of the land involved in this suit was unknown, for it was assessed in the name of the owner. We conclude, therefore, that it was the duty of the assessor to value the property, and that the power of the board consisted in increasing or diminishing such valuation, and that before the assessment could be increased, it was necessary, as provided in the section in question, that the owner of the property should be notified to appear before the board and be given an opportunity to make his objections to such increase. The authority to assess the property carried with it the power to value it, for to make an assessment it is essential that the value be named. An assessment is defined by Judge Cooley, in his work on Taxation, page 351, as "an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. * * * As the word is more commonly employed, an assessment consists in the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them." We are of the opinion, therefore, that the assessor was empowered to fix the values of the property, and if he proceeded in accordance with the law in giving the notice as required, the assessment was valid. As before stated, no certain form of notice is required. Notice by publication, when authorized by law, is sufficient. In Re De Peyster, 80 N. Y., 565.

It is provided in section 195 of the charter that it shall be the duty of every person, partnership and corporation owning property within the limits of the city, within two months after published notice, to hand in to the assessor of the city a full and complete inventory of property possessed by him, her or them. It was in proof that, in compliance with his duty, the assessor published in one of the newspapers of the city a notice requiring all persons owning property in the city to render the same to him for taxation within two months after the first publication. No complaint is made of the action of the assessor in valuing the property, but it is admitted that his acts were satisfactory to appellant. Having given the required notice, the power to assess the property, in case it was not rendered by the owner, is conferred in the charter upon the assessor, and if his valuation had not been changed by the board of revision and appeal, the assessment would have been legal and binding upon appellant. This position is not questioned by appellant, but all his attack is concentrated upon the action of the board, and it is contended that such action of the board in increasing the valuation of certain parts of the land rendered the whole of the assessment made

by the assessor null and void. The contention cannot be maintained. The property is listed separately, and separately valued, each parcel being an assessment in itself. There is no such blending of the property in description or valuation as would affect the divisibility of the assessment; and we hold that while the assessment on the parcels of land on which the valuation was increased by the board of revision and appeal is a nullity, and forms no basis for the collection of taxes, those parcels which were assessed by the assessor and not changed by the board are properly assessed, and appellant is liable for the taxes thereon. We find that the valuation of the assessor on lots 7 and 9 in block 16 on the south side of Fifth street, and the improvements thereon, were not altered by the board, but the valuations on the other parcels of land were increased.

The judgment of the District Court is therefore reversed, and judgment will be rendered in favor of appellee for the sum of $90.20, taxes due by appellant on lots 7 and 9, block 16; for the sum of $12.65, taxes due on personal property, and for one dollar poll tax, aggregating the sum of $103.85, together with interest thereon at the rate of 8 per cent per annum from March 30, 1891, and a lien is foreclosed on said lots 7 and 9, in the sum of $90.20, with interest at 8 per cent from March 30, 1891.

*Reversed and rendered.*